# CASES

## IN THE

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1872.

### ELISHA LINDER

#### *v.*

### DAVID CARPENTER.

1. CONTRACT—*against public policy.* A contract made with officers of a railroad company, acting in their individual capacity, to induce them to establish the line of the road at a given point, for the purpose of promoting the private advantage of the contracting parties, is against public policy, as tending to sacrifice the interests of stockholders and of the public, and will not be enforced in equity.

2. RESCISSION FOR FRAUD. On bill in chancery to set aside a conveyance of an interest in land, made by the grantor to secure the location of the line of a railroad near such land, on the ground of fraudulent representations of the grantee and others interested with him, to induce the conveyance, the court refused to decide whether, if the fraud were proved, the complainant could have relief, and affirmed a decree dismissing the bill for want of proof of the fraud.

WRIT OF ERROR to the Circuit Court of Coles County; the Hon. JAMES STEELE, Judge, presiding.

(309)

Messrs. HENRY & READ, for the plaintiff in error.

Mr. S. M. SHEPHARD, for the defendant in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In November, 1853, the appellant, Linder, owning lands where the town of Mattoon now stands, and being desirous that the Terre Haute & Alton Railway, then in process of construction, should cross the Illinois Central Road at some point upon his land, and thus cause the growth of a town, executed a bond to one Messer, binding himself to convey to Messer an undivided twenty acres for the sum of fifty dollars, upon condition that the T. H. & A. R. Road should cross the Central at or near the center of the section in which the land was situated. Messer at the same time executed a declaration of trust, showing that he was to hold the land for the joint benefit of himself, Carpenter, Tuell, Hunt, and Sanderson. Messer was a contractor upon the road; Hunt, the chief engineer; Carpenter, the chief engineer for this division; and Sanderson was paymaster. In what way Tuell was connected with the road does not appear. The line was established across the land; and, in January, 1854, Linder conveyed an undivided twenty acres to Tuell, Sanderson, and Carpenter. In May, 1855, they reconveyed to Linder, in order that the entire premises in which they held an undivided twenty acres might be laid out into blocks and lots, and in July, 1855, Linder conveyed back to Carpenter certain blocks representing the twenty acres. The town of Mattoon grew up upon this and adjacent tracts. At the October term, 1865, Linder filed his bill in the circuit court against Carpenter, alleging that the above recited contract and conveyance had been obtained from him by fraud, and asking that Carpenter should be decreed to account to him for the proceeds of the lots sold, and to reconvey to him the lots unsold. On the hearing, the court dismissed the bill.

We had occasion, in the case of *Bestor* v. *Wathen,* 60 Ill. 138, to express our views of contracts of this character made between private individuals and the officers of a railway company acting in their individual capacity. We said, in the opinion in that case, that contracts like the one before us, made between the land owner and the railway officials, in order to establish the line of the road for the purpose of promoting the private advantage of the contracting parties, were against public policy, because tending to cause a sacrifice of the interests of the stockholders and of the public. In that case the land owner had refused to convey, and the railway officials filed their bill to compel a conveyance. We held the contract, one which a court of chancery would not enforce.

Our views of the character of such a contract are wholly unchanged; but this case comes before us in a different shape. Here the contract has been executed by the transfer of the title; and more than twelve years after the deed was made, the grantor comes into court and asks that it be rescinded, and the title be reinvested in himself. This is sought upon the alleged ground that the defendant and his co-officials, with whom the contract was made, falsely represented that they could control the location of the line, and threatened, unless complainant and others would convey lands to them, they would cross the Illinois Central several miles further north, when, in fact, as complainant insists, the line of the road was already established where it was subsequently built, at the time the contract was made, and these persons had no control over it. It is urged by counsel for complainant, that, although such a contract may be objectionable, the complainant is not *in pari delicto,* and, if the victim of fraudulent representations, is entitled to relief.

We do not find it necessary to determine whether, if the fraud were proven, we should be constrained to refuse the relief sought, on the ground that the complainant does not come into court with clean hands. It is enough to say that the complainant has not proved the alleged fraud. It is true, the

persons with whom he contracted, had no legal power to control the line of the road, and it is impossible that the complainant, who was himself a stockholder in the road, and must have known of the existence of a board of directors, should have understood their representations in that sense. They meant, and must have been understood as meaning, that practically they could determine whether the new road should cross the Central near the center of the section in which the complainant's land was situated, or a mile or two further north or south. As one of these parties was the chief engineer of the road, another the chief engineer of that division, and a third one of the contractors, we can entertain no doubt that it was in their power to exercise a most potent influence upon the exact location of the line. This would necessarily result from their official position; and Sanderson testifies that Hunt, Carpenter, and Messer, controlled its location, and he has no doubt the donation of lands at Mattoon secured the location there. We can discover no fraud in these representations.

But it is urged, that at the time the contract was made, the location was already established. This position is not sustained by the evidence. It is true, the contract to build the road had been executed; but that did not define the point for crossing the Central Road; and Sanderson swears positively that the line had not been established when the bond was signed.

It is further urged, that from the conformation of the country, the line must necessarily have crossed the Central at Mattoon, and that this fact was known to the engineers and to their fellow-purchasers. It may be true that this was the best route; but it is not proven, and probably is not true, that these parties could not have caused the adoption of a line so far variant from the one agreed upon as to defeat the views of complainant.

We see no ground for the rescission of this executed agreement. The railway officials made a contract which they ought never to have made, but there is no satisfactory proof that they practiced a fraud upon the complainant. He was willing

to give twenty acres of his land in order to secure the building of a town on the remainder. He accomplished his object, and has realized large profits. Nearly two years after making his first contract, he ratified it by executing a second deed; and for a period of twelve years, acquiesced in the entire transaction. He then concluded he had been defrauded, and brings this bill. Possibly, the rights of the stockholders and the interest of the public may have been sacrificed, but this complainant has no private grief which he can ask a court of equity to heal.

*Decree affirmed.*