The Enid Right of Way and Townsite Co., *a corporation,*
v. W. L. Lile.

(Filed June 16, 1905)

1. CORPORATIONS—Railroads—Arguments Influencing Public Duties
A railroad company is a quasi public corporation, and the public has an interest in the location of its stations and depots. An agreement which tends to influence or lead persons charged with the performance of the duty of locating such railroad stations or depots, is an agreement to influence the discharge of a trust to the public, intended by law. for the benefit of the people. and any agreement which tends to influence, restrict or limit that power for a pecuniary consideration, running to such company or its a-gents, or persons supposed to have an influence with such company will be void as against public policy, and not enforceable by the courts.

2. **SAME.** Public policy requires that a railroad company chartered by the authority of the Territory, should not be permitted to limit these franchises by contract which will place it in a position where it is not free to act in the location of its railroad stations and depot at such points as the public convenience may require. And a contract which provides that for a consideration the location of a railroad station or depot by the railroad corporation shall be at a certain point, without regard to the question of the needs of the people, or the public convenience, is against public policy.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*Daniel Huett,* and *Dale & Bierer,* for plaintiff in error.

*M. C. Garber,* and *W. S. Denton,* for defendant in error.

STATEMENT OF FACTS.

This was an action brought to recover judgment upon a note given by W. L. Lile, the defendant in error, to the Enid Right of Way and Townsite Company, plaintiff in error. The consideration of said note was the location of a railroad station and depot on the line of the Denver, Enid & Gulf Railroad, in Garfield county, Oklahoma Territory. This case was originally commenced in the justice court, and an appeal was taken to the district court, where a demurrer was filed to the bill of particulars, which demurrer was sustained by the court, and judgment rendered for the defendant against the plaintiff for costs, from which the plaintiff now prosecutes this appeal. The only question in this case to be determined, is whether the bill of particulars states facts sufficient to constitute a cause of action.

Opinion of the court by

Irwin, J.: The only part of the bill of particulars necessary to refer to for a decision of this case is that part

marked Exhibit "A", which is a copy of the note sued on. The note is as follows:

"Garfield County, O. T. July 1, 1902.

"In consideration of the location of a railroad station and depot, on either the north half of section 31, or the south half of section 30, or on both of said sections, in Otter township, Garfield county, Oklahoma, on the line of the Denver, Enid & Gulf Railroad, I agree and promise to pay to the said Enid Right of Way and Townsite Company, seventy-five dollars, to be due and payable when the said road is completed to the point where said location may be made.

"W. L. LILE."

Now the sole question for consideration by this court is: Is this note in contravention of public policy, and is it one which the courts, with due regard for the rights of the public and sound policy, should enforce? We take the rule to be well established that a railroad company chartered by authority of law is a *quasi* public corporation, and the public have an interest in the location of their lines of road and depots. That in the discharge of this duty to the public, said railroad should recognize it as a paramount duty to establish and maintain their depots at such points, and in such manner as to best subserve the public necessities and conveniences. We take it to be the policy of the law that a railroad company charged with this duty occupies a trust relation to the public to the extent of fairly, freely and honestly discharging that duty to the best interests of the public, and any contract which has a tendency to restrict or limit the free action of the railroad company in the discharge of that duty is against public policy. That the location and establishing of its lines, and the location and establishing of railroad stations and depots is a duty which it owes to the public, is supported by

many authorities, among which is the case of *Marsh v. N. R. R. Co.* 64 Ill. 414 where that court said:

"Railroad companies in order to fulfill one of the ends of their creation—the promotion of the public welfare—should be left free to establish and re-establish their depots wherever the accomodation or the wants of the public may require."

In the case of *People v. Chicago & A. R. Co.*, 130 Ill. 175, the court said:

"It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points and in such manner as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and re-locate their depots are against public policy, and therefore void."

In *St. J. & D. C. R. Co. v. Ryan,* 11 Kan. 602, the Kansas supreme court, speaking through Mr. Justice Brewer, says:

"Railroad companies are public agencies, and perform public duties. They are agencies created by the public with certain privileges, and subject to certain obligations."

Now the question is, does the condition contained in the note as a consideration, to-wit: The obligation that the Denver, Enid & Gulf Railroad, a corporation chartered by authority of the Territory, shall locate a station and depot on the north half section 31, or the south half of section 30, or on both of said sections, in Otter township, Garfield county, Oklahoma Territory, in any way restrict the free and unlimited discretion of the said railroad in the location of its depots and stations at such point as will best subserve the public interests. If so, then it is in contravention of public

policy, and the decision of the district court in sustaining a demurrer thereto, was right.

In the case of *Peoria Railroad Co. v. Cole Valley Min. Co.*, 68 Ill. 489, it was held:

"That the duties which railroad corporations owe to the public and which are the consideration upon which their privileges are conferred, cannot be avoided by neglect, by refusal, or by agreement with other persons or corporations, and that any contract to prevent the faithful discharge of any such duties, will be against public policy and void."

In *Thomas v. West Jersey Railroad Co.*, 101 U. S. 83, it is said:

"Where a corporation like a railroad company has granted to it by charter a franchise intended in a large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions, which undertakes without the consent of the state to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the state and is void as against public policy."

Now if this note, instead of being given to the Enid Right of Way and Townsite Company, had been given directly to the Denver, Enid & Gulf Railroad Company, it seems to us that it must certainly be held to be against public policy, for the reason that by its terms it requires the location of the depot or railroad station at a certain point, and in that requirement, no mention is made as to whether such point is for the convenience of the public, or otherwise, and under the law, the Denver, Enid & Gulf Railroad Company is required to locate its depots and stations where the public interests would be best subserved, and would not be permitted

to take the sovereign power of the people delegated to it by the charter obtained from the Territory and place the same up to be sold to the highest bidder. Now is the principle any different whether this note is given to the Denver, Enid & Gulf Railroad, or to some person supposed to have influence with the company, for the purpose of inducing that person to influence the railroad company to do something which is against public policy? Now it would not be reasonable to presume that this note was given to the Enid Right of Way and Townsite Company, unless it was presupposed that the said townsite company had influence with and power over the said railroad to carry out its contract and secure the location of the depot at the point designated.

Counsel for plaintiff in error contends that this obligation is not against public policy, for the reason that it does not pretend to prohibit the location of stations or depots at other points on the line where the public interests and necessities may require, and the authorities cited by them are all to the effect that contracts held to be void on account of public policy are those in which not only the company is required to locate its stations and depots at a certain point, but also contains a provision against locating them and using them at other points in the same vicinity; and from this they reason that a contract which did not contain this prohibitory clause would not be void as against public policy. We have examined the authorities cited by counsel for plaintiff in error and we fail to find any which holds that a contract entered into whereby the railroad company is obligated to place its railroad station and depot at a certain designated point, and wherein no reference is made to the public convenience or necessity, is not void as against public policy. The fact that this con-

tract does not contain an absolute prohibition against the railroad company building and maintaining and operating a railroad station or depot at some other point in near proximity to this station or railroad depot mentioned in the contract, does not relieve it from the criticism that it is an attempt to limit and abridge the free exercise of discretion by the railroad company in the location and operation of its railroad stations and depots. True, the railroad company might, if the necessities and convenience of the public required it, build a railroad station or depot on the next section, or at some other point in close proximity to the point designated in the contract in evidence in this case; and it might be that by the strict terms of this contract it would not be prohibited from so doing, but common experience teaches us that railroad companies are not likely to go to the additional expense of building two depots on the same line of railroad in close proximity to each other for the sole purpose of benefiting the general public, when the same is to their own disadvantage. Certain it is that the terms of this contract are a limitation and abridgment on the free and unlimited discharge of the trust duty of locating depots and stations along its line at such points as will best serve the public interests and necessity.

Another line of authorities cited by plaintiff in error are cases where the notes or contracts sued upon are what is known as subscription notes or contracts. There is nothing in the bill of particulars, or in the wording or language of the note in question which indicates that this was a subscription note. The line of authorities cited by counsel holds that notes given in the way of subscription to aid in the building of a public enterprise, including railroads, are valid obliga-

tions; but as before said, there is nothing in the bill of particulars which tends to show that this note was given as a subscription, neither does it appear in the note that it was given for that purpose, and in fact, the word subscription, or anything equivalent thereto, does not appear in either the bill of particulars or the note. The note, on the other hand, recites specifically that the consideration is "The location of a railroad station and depot" at the point designated. Observe that the language is the location of the railroad station, and not for and in consideration of the building of the railroad or the building of the depot, but was for and in consideration of the location of a railroad station and depot. Hence we think that we have no right to presume, in the absence of language indicating that intent, that this note was given as a subscription note. We think this case falls clearly within the principle laid down in the case of *Fuller v. Dame,* 18 Pick, 472. In that case a note was declared void whose consideration was an agreement successfully carried out to induce a corporation to locate its depot in the vicinity of certain lands of the payee of the note, and in delivering the opinion, Chief Justice Shaw said:

"It is obvious that if one large land holder may make a valid conditional promise to pay a large sum of money to a stockholder or influential citizen on condition that a work of great public improvement may be so fixed as to enhance the value of his estate, all other great landlords may make like promises, or similar conditions and great public works which should be conducted with a view to the public interest and to the just rights of those who make advances for the public benefit would be in danger of being overlooked and sacrificed in a mercenary conflict of separate local and private interests."

Counsel for plaintiff in error at page 5 of their brief, make this statement:

"Another class of cases is those in which some officer, *or other person* supposed to be influential with a railway company undertakes for a consideration moving to it, to secure the location of stations, depots, etc., at a particular place."

And they cite the case of *Fuller v. Dame,* 18 Pick. 472. Then they say on the same page of their brief:

"All such contracts are void as against public policy," in support of which they cite *Bestor v. Wathen,* 60 Ill., 138; *Linder v. Carpenter,* 62 Ill. 309. But they say that the case at bar does not fall within this class.

Then on page 6 of their brief, they say.

"Still another class is that to which the case under consideration is allied. Such are the cases in which an agreement has been made between an individual and a railway corporation, for the location of a station or depot at a particular place, in consideration of a donation of money or property to the corporation, without any restriction or prohibition against any other location."

Now we take issue with counsel for plaintiff in error in the statement that the case at bar does not fall within the first, but does fall within the second class of cases cited. Let us compare the two and see: The note sued on in this case, by the terms thereof runs to the Enid Right of Way and Townsite Company, and is made upon the express condition and consideration that a depot shall be located at a certain point on the line of the Denver, Enid & Gulf Railroad. Now this is a contract, not with an officer of the Denver, Enid & Gulf Railroad, but with *another person,* to wit: The Enid Right of Way and Townsite Company. It is

reasonable to presume that the maker of this note supposed that the Enid Right of Way and Townsite Company had some influence with the railroad company, and it provided for the location of this depot by the railroad company. Hence we fail to see why it does not fall clearly within the class of cases first cited in the brief of plaintiff in error, which they admit, and cite authorities to prove that if it does fall within that class of cases it is void as against public policy. We think a comparison of the second class of cases cited by plaintiff in error will show that this case does not fall within their second citations, because in the second class of cases they say the agreement has been made between an individual and a railway company, for the location of a depot at a particular place, in consideration of the donation of money or property to the corporation. Now this is not a contract between an individual and a railroad corporation. It does not contain a provision for the donation of money to the railroad corporation. Hence we think that all of the authorities cited in support of a note given as a donation to induce the building of a railroad or the building of a depot or railroad station where the donation is to the railroad company, is not in point in this case, and we think that it is clear from the admissions of plaintiff in error in their own brief that this note in question falls within a class which is prohibited by law as being against public policy. We think that one of the strong reasons why contracts of this character are against public policy is because of their corrupt tendencies, whether by lawful or unlawful means, to prevent the free exercise of discretion by the railroad company in locating their railroad stations and depots for the best interests of the public and the interests of the people. The law in its wisdom, we think has a

tendency to close the door of temptation by refusing to recognize contracts which in any way hamper the faithful discharge of the trust which the railroad company owes to the people in the location of public conveniences. Directors of railroad corporations occupy a two fold relationship: First, with the stockholders of the road; and second, with the public. They will not be permitted on the one hand to enter into contracts for their own pecuniary gain. Neither will they be permitted to compel payment from the people for doing that which the law requires them to do. Under the law, the directors of the Denver, Enid & Gulf Railroad Company were required to establish and maintain their stations and depots wherever public interests and conveniences would be best subserved, and the rule, we take it, is elementary, that the performance of an act which the party is under legal obligations to perform, cannot constitute a valid consideration for a promise. (Beach on Contracts, 1st·vol. 187; Parsons on Contracts, 437; 91 N. Y. 392.) And neither the promise to do, nor the actual doing of that which the promisor is by law bound to do is a sufficient consideration to support a promise in his favor. (Pollock on Contracts 177; Bishop on Contracts 420; *Woodstock Iron Co. v. Richmond and Danville Extension,* 129 U. S. 643.)          ,

We think the policy of the law is decidedly against the enforcement of contracts which permit those entrusted with the discharge of a public duty to exact tribute from the people for doing that which the law requires them to do. If such contracts were enforceable, the building of every new railroad through this territory would subject the officers of that railroad to the temptation of every mercenary person who had some selfish motive for the location of all the depots and

railroad stations along the line for the benefit of their own private interests, and to carry out this, selfish designors would enter into contracts of pecuniary advantage to any officer who might have in charge the duty of locating such public conveniences, and the question of the best interests of the public would be lost sight of in the great individual struggle to locate such conveniences for private and not public benefit. Hence we think that the only safe doctrine is to hold that any contract either with a railroad corporation, or with any person presumed to have influence with such corporation whereby such corporations are to be limited, restricted or hampered in the faithful discharge of their duties to the public in the way of locating railroad stations and depots along its line, are things to be held not enforceable in the courts. Hence we think that the decision of the district court in sustaining the demurrer to the bill of particulars was right, and for this reason the decision is affirmed at the costs of the plaintiff in error.

Beauchamp, J., who presided in the court below, not sitting; Burford, C. J., Burwell, J., and Pancoast, J., dissenting; Gillette, J., and Hainer, J., concurring.