138          BESTOR *et al.* *v.* WATHEN *et al.*          [Sept. T.,

Syllabus.

## GEORGE C. BESTOR *et al.*

*v.*

## JAMES H. WATHEN *et al.*

1. CONTRACT—*in respect to the location of a railroad.* Two persons owning a tract of land on the line of a railroad, contracted with the president of another road then being constructed, and a firm of individuals who had contracted to build that road, to lay the land off into town lots, and, after selling lots to the amount of $4800, to convey to the president of the road and to the construction company an undivided half of the remaining lots. The president and the individuals composing the construction company were to pay no money, but agreed to "aid, assist and contribute to the building up of a town on said land:" *Held,* that if this contract was made to secure the location of the road at a place where it would not be of the greatest benefit to the stockholders of the road, then it was in the nature of a bribe, and can not be enforced; or, if the place where the parties agreed the road should be located, which was afterwards done, was the route best calculated to promote the interest of the stockholders and the public, and the officers of the company were professing to hesitate between it and another line to procure the agreement, that was a fraud, and the contract can not be enforced in equity.

2. When the legislature grants a company a charter for the purpose of constructing a railway, the grant is made because it is supposed the road will bring certain benefits to the public; and when subscriptions are made to build such a road, it is with the understanding that the officers entrusted with its construction will so locate the line and establish its depots as to

bring the highest pecuniary profit to the stockholders, compatible with a proper regard to the public convenience. These alone are the considerations which should control the action of the president and directors of the road, and so far as they permit their official action to be swayed by their private interest, they are guilty of a breach of trust towards the stockholders, and a breach of duty to the public.

3. EQUITY. A court of equity will not enforce a contract resting upon the delinquency of such officers, or tending to produce it.

4. CONTRACT. If such a contract was entered into when the line adopted was only equally as good as another, then neither the company nor the public were injured, yet the company made their power instrumental of private emolument in a manner which a court of equity will not sanction. Public policy forbids the sanction of such contracts.

5. CROSS BILL—*to remove a cloud on title.* Where, in such a case, the defendants file a bill to have the contract set aside as a cloud on their title, it is error in the court to grant the relief. Having entered into a contract, the effect or the tendency of which was to induce the other parties to commit a breach of duty, they are not entitled to the relief sought.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

Messrs. JOHNSON & HOPKINS, for the plaintiffs in error.

Mr. JOHN BURNS, for the defendants in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In February, 1849, the legislature chartered a company with authority to build a railroad from Oquawka, on the Mississippi river, to Peoria, and in 1852 the charter was so amended as to authorize the extension of the road from Peoria eastward to the State line. In 1855 a contract was made between the railway corporation, of the one part, and the firm of Cruger, Secor & Co., of the other part, by which the latter undertook the construction and equipment of the road. On the 5th of April, 1856, while engaged upon this work, the members of the firm, together with Bestor, the president of the railroad company, Sweat, one of its directors, and Smith, its construction agent, entered into a contract with Wathen

140          BESTOR *et al. v.* WATHEN *et al.*          [Sept. T.,

Opinion of the Court.

and Gibson, the defendants in error, by which the latter, owning one hundred and sixty acres of land situated where the road then in process of construction was expected to cross the Illinois Central, agreed to sell to the first named parties an undivided half of said land upon the following terms : No money was to be paid by the purchasers, but the land was to be laid out into town lots and sold.  The first proceeds of the sale to the amount of $4800 were to be retained wholly by Wathen and Gibson, the owners, and when this sum was received from sales, they were to convey to the other parties an undivided half of the residue of said land.  The only consideration for this agreement was, that the so-called purchasers should "aid, assist and contribute to the building up of a town on said land."  Wathen and Gibson laid out the land into lots and proceeded to sell, and the town of El Paso was built on this and an adjoining tract.  In December, 1863, the plaintiffs in error filed their bill against Wathen and Gibson, asking for an account of sales, and for a conveyance of an undivided half of the lots unsold.  The cause came on to a hearing, and the circuit court dismissed the bill.

It is insisted for defendants in error, that complainants have done nothing to aid in building a town on said land, and have therefore no claim upon a court of chancery for a decree of specific performance.  The record sustains this view, except so far as the adoption of a line for the new road that would cross the Illinois Central at this point, and the erection of a depot here, may be considered as within the purview of the contract.  To that extent the plaintiffs in error did contribute to the building of the town.  We have, indeed, no doubt that this was the chief aid which they were expected to furnish, and the question is thus presented, whether a contract of this character is one which a court of equity can be called upon specifically to enforce.

On this question there is slight room for doubt.

When the people, through the legislature, grants to a company the right of eminent domain for the purpose of constructing

a railway, the grant is made because it is supposed the road will bring certain benefits to the public. When the company is incorporated and subscriptions are made to the stock, the money is subscribed upon the understanding that the officers intrusted with the construction of the road will so locate its line and establish its depots as to bring the highest pecuniary profit to the stockholders, compatible with a proper regard to the public convenience. These, and these alone, are the considerations which should control the action of the president and directors of the road, and so far as they permit their official action to be swayed by their private interests, they are guilty of a breach of trust towards the stockholders, and of a breach of duty to the public at large.

A court of equity will not enforce a contract resting upon such official delinquency, or even tending to produce it. Such is the character of the contract before us. If we enforce it, we lend the sanction of the court to a class of contracts the inevitable tendency of which is to make the officers of these powerful corporations pervert their trusts to their private gain at the price of injury at once to the stockholders and to the public. Rendered into plain English, the contract in this case was a bribe on the part of Wathen and Gibson to the president and other officers of the railway company, and to the contractors who were building the road, of an undivided half of one hundred and sixty acres of land, in consideration of which the road was to be constructed on a certain line and a depot built at a certain point. Now, if this was the best line for crossing the Illinois Central, considered with reference to the interests of the stockholders and of the public, then it was the duty of the officers of the company to establish it there ; and if they intended so to do because it was the proper line, but professed to be hesitating between this and another line in order to secure for themselves the contract under consideration, as is somewhat indicated by the evidence, then they were practicing a species of fraud upon the defendants and using a false pretext in order to acquire defendants' property

without consideration. If, on the other hand, this line was not the best, but was adopted because of this contract, the case is still stronger against complainants. If such was the fact, they are asking the court to enforce the payment of a bribe, the promise of which induced them to sacrifice their official duty to their private gain. If, as a third contingency, the choice lay between this line and another equally good, but not better, and they were influenced by this contract to adopt this line, then, although neither the company nor the public has been injured, yet the defendants have made their official power an instrument of private emolument in a manner which no court of equity can sanction. In this particular case no wrong may have been done, and yet public policy plainly forbids the sanction of such contracts because of the great temptation they would offer to official faithlessness and corruption.

The impropriety of such contracts is illustrated even by the argument of counsel for plaintiffs in error. In order to show that they did aid to build the town, it is claimed that, for more than a year, free transportation was given to all persons wishing to go to El Paso with a view of purchasing or settling there, and that a discrimination in the rates of freight was made in favor of El Paso to induce the growth of business there. It surely needs no argument to show that all this was a wrong, both to the stockholders and to the public at large, and we can not but regard it as furnishing, of itself, a most sufficient reason why the courts should regard such contracts as intrinsically vicious, and therefore not to be enforced.

The defendants in the court below filed a cross bill, asking the court to cancel this contract as a cloud upon their title, and this was done. In the view we have taken of the case, the contract should be regarded as so far against public policy that neither party is entitled to the aid of the court. The defendants have entered into a contract, the effect, or at least the tendency of which, was to induce the complainants to commit a breach of duty. The refusal to enforce the contract practically puts an end to it, yet the court should not have

granted affirmative relief on the cross bill. To this extent the decree is modified. Both bills are dismissed, and the costs of this court equally divided.

*Decree modified.*