## James H. Barkley

### v.

## Robert J. Williams.

*Fraud—Railway Official—Special Rates—Contract to Share Profits, Void.*

An agreement between a railroad official and another to divide the profits on a contract, to be secured by the latter, to furnish materials for a public improvment, the only service rendered by the former being to allow the latter lower freight rates than he demanded of others, is void as against public policy.  Such a contract will not support an action to recover a share of the profits realized.

## 214　　APPELLATE COURTS OF ILLINOIS.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. J. PHILLIPS, Judge, presiding.

Messrs. CONNOLLY & MATHER and PATTON & HAMILTON, for appellant.

Mr. L. H. BRADLEY, for appellee.

WALL, J. The appellee recovered a judgment against appellant in an action of account for $763.12, for certain profits in an alleged partnership for the sale and delivery of sand, to be used in paving the streets of Springfield. The important question in the case is whether the contract disclosed by the evidence is impeachable, because against public policy.

Appellee was division freight agent of the Ohio & Mississippi Railway Company, and as such had power to fix the rate of freight on sand from Beardstown, where it was to be loaded, to Springfield, where it was to be used. McBean & Company, the paving contractors, had applied to him for the rate and were informed it would be $10 per car, which included $2 for loading. McBean replied, offering $1.10 per cubic yard delivered on the street, to which appellee responded that the lowest rate would be $9.25 per car.

While this correspondence was going on the parties to this suit entered into an agreement that if they could get the contract for delivering the sand, it should be in the name of appellant, who should do the hauling at twenty cents per yard and whatever profit was left should be equally divided.

They do not agree exactly as to the part to be performed by appellee, but it is sufficiently apparent he was to use his official position to make a favorable rate and to keep other parties out by holding the rates up until the contract was secured. This was managed so well that McBean & Company found it to their interest to make the contract with J. H. Barkley & Company (appellant and appellee), for the delivery of the sand on the streets at $1.25 per yard. Thereupon the

rate of freight was fixed by the appellee at $5 per car, which, considering the cost of loading, was $2.25 per car less than his lowest offer to McBean & Company, and $3 per car less than he had offered to one Bretz, who had also asked for a rate. ·

It is averred by appellant, and there is much to corroborate him in this, that it was understood also that large, high, side-board cars, holding an extra quantity, were to be used. Such cars were used for a few days, but the loads being too heavy, the matter attracted the attention of the division superintendent, by whose order they were taken out of the service and the ordinary twelve ton coal cars substituted and used exclusively thereafter.

Whatever may have been the form of the understanding between these parties, the real service to be performed by appellee was as already stated. He furnished no money and did nothing else. All the care and management devolved upon appellant, by whom all the money required to carry out the contract was furnished. All that was expected of appellee was to so arrange matters as to secure the contract, and then fix a rate lower than was to be offered to other persons. He says he would have given the $5 rate to any other parties. Possibly he would, and probably did so after the McBean contract was obtained, but he showed no such disposition up to that time, and we can not resist the conviction that his action in this respect was a part of the plan by which he and appellant were to manipulate the affair for their own benefit. Such a transaction is against public policy.

The appellee was clearly using his official power for his personal gain, and while it may be that the railway company received a fair compensation for transporting the sand, and while it may be no injury has been sustained by any one, yet the course of the appellee can not be approved. To quote from Bestor v. Wathen, 60 Ill. 138, "in this particular case, no wrong may have been done, yet public policy plainly forbids the sanction of such contracts, because of the great temptation they would offer to official faithlessness and corruption." Any agreement which is calculated to induce a dereliction or laxity in the performance of public or private duty is void. Greenhood on Public Policy, 306.

Aside from the oppressive and partial features of such conduct, should be noticed the direct tendency to increase the cost of public improvements. It would be greatly to the disadvantage of the public if it were generally known that railway officials may lawfully use their authority and position as was done in this instance. The superior opportunities thus presented for controlling municipal and other contracts, would manifestly tend to corruption, extortion and extravagance, and should, therefore, be made unavailing, so far as the influence of the courts may go. In such cases the law will take no cognizance of the contract, and by declining to enforce it or grant any relief upon it, will leave the parties to make the best of the positions which they have voluntarily assumed. "*Potior est conditio defendentis.*" Bestor v. Wathen, 60 Ill. 138; Ray v. Mackin, 100 Ill. 246; Iscanyan v. Winchester Arms Co., 15 Blachf. 79; Cook v. Sherman, 4 McCreary, 20.

The judgment will be reversed and cause remanded.

*Reversed and remanded.*