THE ENID RIGHT OF WAY AND TOWNSITE COMPANY, a corporation v. W. L. LILE.

(Filed September 8, 1905.)

Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.

Daniel Huett and Dale & Bierer, for plaintiff in error.

M. C. Garber and W. S. Denton, for defendant in error.

Dissenting opinion by

BURWELL, J.: I do not agree with those of my associates who have concurred in the majority opinion in this case, and while the amount of money involved in this particular action is insignificant, the principle enunciated is far-reaching and, if followed to its logical conclusion, makes every contract by which an individual or a number of individuals agree to pay to a railroad company any amount of money or property, in consideration of the building of a line of road on a particular location, or in consideration of any act which might, in any possible way, affect the public convenience, absolutely void. The decision is not based upon any statutory provision but it is expressly stated therein, that recovery is denied upon the theory that the contract is against public policy. A contract is against "public policy" when it tends to interfere with the public safety or welfare; when it is against good morals, or where its object is to influence public officers in the discharge of a duty enjoined by law, etc. And one of the reasons assigned by my associates for the conclusion reached is that the contract would prevent the railroad company and its officers from the free exercise of discretion in locating or re-locating of depots; citing authorities which they contend support the position. These cases I will consider before discussing the contract in controversy. They contain many expressions to the effect that a railroad company is a *quasi* public corporation, and cannot bind itself by a contract which will deny to the public that reasonable convenience which is contemplated by the state when it grants the charter to build. I do not particularly find fault with the rules announced in these cases, but contend that, in this case, the court has extended the doctrine

of public policy beyond that point necessary to protect the public welfare, and has, without reasonable justification therefore, stricken down a contract and deprived the plaintiff of a lawful right.

The case of *Restor, et al. v. Wathen, et al.* 60 Ill. 138, while somewhat similar to the case at bar, does not support the conclusion reached in the majority opinion. The railroad company made a contract with Cruger, Secor & Co. by which the latter was to construct and equip the road. While this construction company was engaged in this work it, together with the president, one of the directors and the construction agent of the railroad company, entered into a contract with a third party, whereby such third party (who owned 160 acres of land where this new road was supposed to cross the line of another railroad company) was to deed to this construction company and the officers of the railroad company named, an undivided one-half interest in such land after selling enough of the land to pay himself $4800.00. The road was built, the land platted into lots, and enough lots sold to secure the $4800.00. Whereupon, demand was made for a deed pursuant to the contract, and the owner of the land having refused to execute a deed of conveyance, suit was brought by the construction company and the officers of the railroad company to compel specific performance. Issues were joined, and a trial had. It is apparent from the language employed in the opinion that it affirmatively appeared, either in the pleadings or in the evidence (as it is assumed as a fact) that the railroad company had no interest in this contract; that the contract was made for the sole use and benefit of the construction company and the officers of the railroad company. The bill was dismissed with costs, and most ex-

cellent reasons given therefor. These officers and the construction company were the agents of the railroad company; they were engaged in carrying on the work of their principal; and it is a universal rule of agency that an agent may not take advantage of his position and speculate for his individual profit in matters falling within his duties as agent to the hurt of his principal, without his knowledge or consent. It was this principle which influenced the decision in that case. The court, in commenting upon the facts said:

"Now, if this was the best line crossing the Illinois Central, considered with reference to the interests of the stockholders and of the public, then it was the duty of the officers of the company to establish it here; and if they intended so to do because it was the proper line, but professed to be hesitating between this and another line in order to secure for themselves the contract under consideration, as is somewhat indicated by the evidence, then they were practicing a species of fraud upon the defendants and using a false pretext in order to acquire defendant's property without consideration. If, on the other hand, this line was not the best, but was adopted because of this contract, the case is still stronger against complainants. If such was the fact, they were asking the court to enforce the payment of a bribe, the promise of which induced them to sacrifice their official duty to their private gain. If, as a third contingency, the choice lay between this line and another equally good, but not better, and they were influenced by this contract to adopt this line, then, although neither the company nor the public has been injured, yet the defendants have made their official power an instrument of private emolument in a manner which no court of equity can sanction. In this particular case no wrong may have been done, and yet public policy plainly forbids the sanction of such contracts because of the great temptation they would offer to official faithlessness and corruption."

The court, as disclosed by the opinion, was not called upon to determine the effect of such a contract, when made with the railroad company or with some one else for its use and benefit. The particular contract was made without authority of the principal, and it claimed no right under it. There was no consideration for it, because the construction company and the officers of the railroad had no lawful power, except as agents of the railroad company, to do any of the things which they had promised in the contract. They had agreed to accept a bribe in relation to the performance of a duty. In making the contract they did not pretend to represent the railroad company, and the contract was void for two reasons: first, there was no consideration flowing from them to the owner of the land, and, second, it was an attempt to gain a personal advantage for an act which, in all of the circumstances stated, the law will presume was in violation of the best interests of their principal. It was a contract calculated to encourage dishonesty and fraud on the part of corporate officers, and such as should be condemned as in violation of common honesty and fair dealing. And I wish to state in this connection that the law demands that same integrity on the part of officers of a private or *quasi* public corporation that is required of public officers. The latter are the agents and representatives of the people; the former are the lawful representatives of the stockholders and dishonesty and bribery are as reprehensible when committed against the stock holder of the corporation as it is when committed against the interests of the public. And this sentiment is expressed in nearly all of the cases of a similar kind.

The case of *Linder v. Carpenter,* 62 Ill. 389, is exactly like the case which we have just considered. It involved the

same issues, except in this case the plaintiff had conveyed land to the officers of the railroad company, in order to secure a certain location of the road, and then sought to recover it back. Judgment was for the defendants. One short paragraph from the body of the opinion shows clearly the reasons for the decision. The court said:

"We had occasion, in the case of *Bestor v. Wathen,* 60 Ill. 138, to express our views of contracts of this character made between private individuals and the officers of a railway company acting in their individual capacity. We said, in the opinion in that case, that contracts like the one before us, made between the land owner, and the railway officials, in order to establish the line of the road for the purpose of promoting the private advantage of the contracting parties, were against public policy, because tending to cause a sacrifice of the interests of the stockholders and of the public. In that case the land owner had refused to convey, and the railroad officials filed their bill to compel a conveyance. We held the contract one which a court of chancery would not enforce."

The next case from Illinois is *Marsh v. The Fairbury, Pontiac and Northwestern Railway Company et al.* 64 Ill 414. This case is not in point. The railroad company had agreed to locate its passenger and freight depots at a particular place, and to not locate depots at any other point in the city. The court said that equity will not enforce such a contract. I think, however, that it is fair to assume that the court denied the relief because of the provision which purported to bind the company not to locate any other depot in the city, as it nowhere, in the opinion, refers to the other cases previously decided by that court; and, so far as I have been able to investigate, I find this to be the first time that a contract agreeing not to build a depot at any other place

within a given distance had been considered by that court. The only expression in the entire opinion which tends to support the theory adopted in the majority opinion in the case at bar is as follows: "And when once established, (depots) a change of affairs may require a change of location in order to suit the public convenience." This expression was *obiter dictum,* and is entitled to no particular consideration, as the question of relocating a depot was not involved in the case. The suit was for specific performance, and if the contract was void for any reason, it could not be enforced. The contract was void because of the agreement not to locate a depot anywhere else, and the prayer of the petition was rightfully denied; but we insist that the decision of that case has no bearing upon the one before this court.

The case of the *Peoria and Rock Island Railway Company v. the Coal Valley Mining Company,* 68 Ill. 489, is not similar. That case involved the consideration of a contract relating to the transportation of freight. The contention that every contract which gives one shipper special advantages and denies them to others, is against public policy and void, will be admitted by every lawyer. When the supreme court of Illinois used the language quoted by my brethren, to the effect that, "the duties which railroad corporations owe to the public and which are the consideration upon which their privileges are conferred, cannot be avoided by neglect, by refusal, or by agreement with other persons or corporations, and that any contract to prevent the faithful discharge of any such duties will be against public policy and void," it had reference to a contract involving the carrying of freight. No question pertaining to the location of a depot or similar question was involved.

The supreme court of Illinois decided one other case which is cited in the majority opinion, and to which I desire to call attention. I refer to the case of *People, ex rel Hunt, Attorney General, v. Chicago & A. R. Co.* 130 Ill.175; 22 N. E. 875. The plaintiff, after the formal allegations, alleged in the petition that the town of Upper Alton was an incorporated town containing more than 1800 inhabitants; that many persons required the use of the defendant's railway in order to be transported as passengers to and from said town; that in such town were many merchants, manufacturers, dealers and business men; that it was some three and one-half miles to the nearest station on the defendant's line of road; that the defendant had acquired and then owned suitable depot grounds for the erection of depots, etc. which grounds it had acquired by condemnation· proceedings; and the petition contained many other allegations showing the necessity of the depot for passengers and freight, and the legal and moral obligation of the company to erect and maintain them. The prayer was for a writ of mandamus to compel the company to build and maintain the depots. The supreme court first sustained the judgment of the lower court denying the writ, but, on rehearing, it held that the writ stated a cause of action and changed its former ruling, and reversed the lower court. The court went no further than to uphold the doctrine that, where a duty is imposed by law upon a railroad company, mandamus may be obtained to compel the performance thereof. The railroad company had recognized the necessity of depots at the point in question, and its duty to erect and maintain them by condemning ground for that purpose. In order to exercise the right of eminent domain as to the site condemned, the railroad company had

to allege that such land was necessary for depot purposes. The law would not permit it, after exercising that right, and after depriving the citizen of his property against his will, under the solemn declaration that it needed· the land for de- pot purposes, to say that it was under no legal obligation to build depots, especially when it did not deny the allegation of the petition, but admitted the necessity thereof by filing a demurrer to the petition. The case cannot be considered as an authority in the case at bar, except in so far as it dis- cusses, in a general way and in general terms, the duty of railroad companies to the public.

The case of *Abraham W. Fuller, et `al. v. Abraham A. Dame,* 18 Pick. 472, is also cited in the majority opinion. Dame had executed a promissory note to Fuller, (who was a stockholder in the railroad company) for $9,600, which, to- gether with a contemporaneous contract, was deposited with a third party. The note was to be paid when the railroad company had located its depot at a particular site. The railroad company had no interest in the note and contract, and their existence was not known to it, or its officers. It was held that the contract and note were void, and could not be enforced, even though the depot had been located at the designated place. The court in discussing the matter, said:

"They (the directors) had a right to his (Fuller's) dis- interested judgment and advice upon the question of location ;. and this could not be exercised whilst he held and relied up- on a promise for a large sum or money, the payment of which depended upon the decision of this question by the directors. * * * Mr. Fuller was one of the original proprietors of the Worcester railroad, his associates had a right to believe that, in all his acts as such stockholder, in choosing direct- ors, in framing by-laws, and doing other acts, pursuant to·

the powers of the corporation, he had a common and (in proportion to his shares) an equal interest, and they had a right to rely on his judgment, his recommendations of directors and other acts, with all the confidence inspired by such belief. A contract assuring him separate and distinct advantages operated to mislead and deceive them, and this had a tendency to operate as a fraud upon them."

This decision was written by Chief Justice Shaw, and is cited perhaps more than any other case. It is entitled to great weight because of the acknowledged ability of the court which rendered it, and particularly of the learned chief justice by whom it was prepared. But what is the law of that case? It simply decides that a contract by which it is agreed to pay even a stockholder of a corporation a valuable consideration for his influence in attempting to secure the corporation to perform a particular corporate act, is absolutely void, as against public policy, and will be treated as a fraud upon the other stockholders.

Nor does the case of *St. Joseph and Denver City Railroad Co. v. Joel Ryan,* 11 Kan. 602, support the majority opinion of this court. In that case the contract was for the building of a depot at a given point, and further provided that the railroad company should not "have or use a depot" within three miles of such location. Justice Brewer, who prepared the opinion, makes it plain that the contract was held to be void because it attempted to prohibit the railroad company from "having or using" a depot within three miles of the one to which the contract referred. He said: "Is a contract not to build or use a depot within certain limits a valid and binding contract?" and then proceeded to discuss the duties of railroad companies and their inability to bind them-

selves by contract to refrain from performing acts which are necessary for the public convenience; but at the end of the opinion, evidently wishing to make it clear that the court only intended to decide that a contract not to build a depot within certain limits was void, the learned justice added these words:

"We have considered this case as it was considered in the court below, as showing a contract on the part of the plaintiff in error not to build or use a depot within certain limits, for the breach of which damages were awarded by the jury. It would not be proper for us to inquire at present in what condition the rights of the parties are left by this decision. The judgment will have to be reversed and the case remanded leaving each party to take such subsequent steps for the enforcement of his rights as may be judged best."

Further comment as to this case is unnecessary; and at least one subsequent decision by the supreme court of Kansas supports the position which I have taken. The case of *Thomas v. the West Jersey Railroad Company*, 101 U. S. 71 has no reference to the location of a depot. In that case one railroad leased its road and equipment to another company for a period of twenty years. After the lessee had used the property for a portion of the time named, the lessor re-took the property, and the lessee brought an action for damages. Judgment was for the defendant, on the ground that a railroad company has no power to transfer to another company the right and power to operate its road, unless its charter expressly authorizes the same, and that as the charter of the lessor did not so provide, the lease in question was *ultra vires* and void, as against public policy.

The case of *Woodstock Iron Company v. Richmond and Danville Extension Company*, 129 U. S. 643, is similar to

other cases herein referred to. The Richmond and Danville Extension Co. contracted with the Georgia Pacific Railroad Company to construct that company's road by the nearest, cheapest and most suitable route from Atlanta to Columbus, for a consideration of $20,000 a mile. J., who was a director in, and the vice-president of the extension company, and also a director in the railroad company, entered into a contract on behalf of the extension company, with the iron company whereby the extension company was to deflect the line of road to Anniston, thereby lengthening the road by some five miles, in consideration of the payment of large sums of money, and the conveyance of a valuable tract of land by the iron company to the extension company. The railroad company did not know of the contract. The court said: "That the contract was void as immoral in conception and corrupting in tendency; it being nothing less than a bribe offered by the iron company to the extension company to disregard its agreement with the railroad company to construct the road by the shortest, cheapest and most suitable route." The extension company, while acting as the agent of the railroad company, had betrayed its trust and, in violation of its solemn agreement with its employer, lengthened the road to the loss of the railroad company of $100,000 in the building of the road alone to say nothing of the additional cost of operation. No court would think of aiding one in such a base transaction. The extension company sought to profit illegally at the expense of its principal. Such acts have been universally condemned.

These are all of the cases cited by my brethren which they contend justify their decision in the case at bar, except decisions to the effect that, where the law imposes the

duty of performing a specific act, the performance thereof cannot constitute a sufficient consideration for some other obligation. I take no exceptions to this rule.

There are a number of cases which hold that a private individual city or county may subscribe for stock in a railroad corporation, and that they may bind the company to the performance of affirmative acts. These cases are based upon statutory provisions in the different states; therefore I shall ignore them altogether, as an act which the legislature of a state has expressly authorized, ordinarily, will not be held to be against the public welfare. It is a very easy matter to assert that a contract is against public policy; much easier sometimes than it is to establish by reason and logic either the affirmative or negative of the proposition. It is a convenient reason for denying a recovery, and is frequently used without due regard to the real meaning which the expression conveys. It was used in practically all of the cases cited in the majority opinion, but the acts to which the words were applied in those cases were in no sense similar to the acts contemplated in the contract involved in this case, which have been condemned by the majority of this court as being in violation of the public welfare. As I have stated, (and I think the contrary cannot be found in any decision) a contract by a railroad company agreeing not to build any other station or depot within certain limits, is void,—void because it attempts to deprive the corporation of the power to meet the changing conditions and necessities of the public. But because public policy demands that contracts not to build a depot at a certain place be held to be void, it does not necessarily follow that a railroad company may not agree, for a consideration, to build one at that same place. There are

many acts which one may lawfully contract to perform, and yet a contract agreeing not to perform them would be void as against public policy; as, for instance, one may lawfully contract to marry, to support his parents, to contribute to the church or to charitable institutions, and be bound by the terms of his agreement; and yet a contract not to do any one or more of these, or many other acts which might be named, would be absolutely void. The reason for this is that an agreement not to do these things is in violation of the general conception of the public good. The contracts held to be void as against public policy, involved in the opinions to which I have referred, and which I have tried to distinguish from the one in controversy, were not condemned because they related to the building of depots, but because the particular officers or agents of the companies had tried to obtain a personal advantage to the detriment of the company which they represented. The same rule would have been applied if they had been representing any other corporation or individual.

Passing from these questions, I wish to refer to the contract itself, which is as follows:

"Garfield County, O. T., July 1, 1902.

"In consideration of the location of a railroad station and depot, on either the north half of section 31, or the south half of section 30, or on both of said sections in Otter township, Garfield county, Oklahoma, on the line of the Denver, Enid and Gulf Railroad, I agree and promise to pay to the said Enid Right of Way and Townsite Company, seventy-five dollars, to be due and payable when the said road is completed to the point where the said location may be made.

"W. L. LILE."

The contract, as will be observed, is payable to the Enid Right of Way and Townsite Company, instead of to the Denver, Enid & Gulf Railroad Company. The majority opinion, however, concedes that this does not change the liability of Lile, who is the appellee. In the circumstances, as disclosed by the record, I think that this is correct, because, in the absence of any showing to the contrary, it will be presumed that the contract was executed by and with the authority and consent of the railroad company, and for a consideration. Section 774 of Wilson's Annotated Statutes, provides that "A written instrument is presumptive evidence of a consideration," and that "the burden of showing a want of consideration, sufficient to support an instrument, lies with the party seeking to invalidate or avoid it." The contention that this statute has no application where the consideration is named is untenable. Presumption of consideration carries with it the inference of value; that is, that the consideration named, no matter what it be, is of sufficient value to support the contract, and also that the payee named therein has such interest, either for himself or as the representative of another, as authorizes him to make it, except in cases where the consideration named, or the contract itself for other reasons appearing therein, cannot be upheld upon any reasonable theory consistent with public policy. Where such exceptions do not appear, want of consideration must be pleaded and proved. If the instrument in question was taken without the knowledge or consent of the railroad company; that is, without any consideration flowing from the right of way company to the railroad company in anticipation of such contract, no recovery could be had, because it would also be without consideration as far as Lile was con-

cerned, and therefore void; and had the majority opinion been placed upon this ground, the cases cited in support thereof would be entitled to great weight, if the record supported such a conclusion of fact. Personal influence alone, to secure the location of a railroad depot, is not such a consideration as will support a contract for the payment of money. Such agreements may be avoided under the same rule which defeats contracts the objects of which are to control legislation or influence public officers. If the defendant relied upon the defense of want of consideration, or that the contract was void because made by the agent of the company without the railroad's knowledge or consent, and for the personal benefit of the right of way company, he should, if the case had been in a court of record, have pleaded such facts in his answer; but as this was a case originally commenced in the justice's court, he should either have pleaded such facts or proven them. Having done neither, but having filed a demurrer to the plaintiff's bill of particulars, the law implies a consideration and good faith in the entire transaction. Notwithstanding all of these presumptions in favor of the contract, it is said to be void because it tends to influence, restrict and limit the powers of the company. That a contract of this kind may influence the action of the company I admit, but that it restricts or limits its powers, or purports to do so I deny. This influence of action, however may be directed toward better service to the public, but, whether it is or not, the courts, in the absence of statutory inhibition, cannot deprive a railroad company of the right to accept money or other property in consideration for the building of a depot on a particular location. One person, in the eyes of the law, is just as much entitled to advanta-

geous railroad facilities as another, and the courts, except un-
der peculiar conditions, have always refused to interfere with
the management of railroad companies, as to the location of
relocating of stations and depots. If the company for rea-
sons which appear to justify such a course, in the absence of
statute, afford depot accomodations to a small community of
people and deny such privileges to communities of larger pop-
ulations, there is no rule of law which will compel a different
course; and it often happens in the building of lines of rail-
road that one route will be shorter and of greater benefit to
the public than some other route of greater length, and yet
because of the hills, rocks and rivers or other obstacles, the
shorter line be more expensive on which to build. In fact,
the expense might be so great that no company would as-
sume the burden incident to such construction. What rule
of public policy would prevent those owning property along
the shorter route from contributing to the railroad com-
pany the additional cost of building on such line, in con-
sideration for the benefits which such a road would bring to
them, in the advance of property and conveniences to them-
selves and the community generally? They have taken from
no one else any property, they have deprived no one else of
any right or privilege; and while it is true that railroads are
intended for the public service, they are also operated for pri-
vate gain, and instead of it being against public policy to con-
tract to pay them in consideration of building along a par-
ticular line, or for locating a depot at a designated place, not
only have different states authorized their counties and other
municipal subdivisions to subscribe to the capital stock and
contribute aid in order to secure the building of the railroads,
but the general government has also followed the same pol-

icy, and donated many thousand acres of land to such companies, as an inducement to build through designated sections and between designated points. Persons who desire to build a railroad, have a right to determine for themselves where such road shall be built; and, no matter where they conclude to build, it is the duty of the state officers, except where the law points out a different course, to issue a charter therefor. In furtherance of the public welfare, laws have been enacted compelling railroads to erect and maintain depots at county seats, and other towns containing more than a certain population; but so far as I am advised no state has ever prohibited the building of a depot in a place of less than a certain population, or denied to the citizens the right to aid in the building of such depot, or to the company the power to accept such aid, or contract in relation thereto. The contract in this case in no way · prevents the railroad company from abandoning the depot or from re-locating it, if future developments should make it necessary. The maker of the note would have his remedy, which has been recognized in other states.

These views are supported by the authorities, to some of which I wish to direct attention. In the case of *Lyman v. Suburban R. Co.,* 190 Ill. 320 60 N. E. 515, which is a much later case than the Illinois cases cited in the majority opinion, it is said:

"Where a right of way over certain land was granted to a railroad company, and on the conditions subsequent that it should erect passenger stations at certain points thereon, and such company, its successors and assigns, should construct, operate, and maintain a railroad on such right of way, such conditions were not void as against public policy."

And, again, in the same opinion, the court not only discusses the earlier cases of that court, but distinguishes them and adopts the same rule for which I contend, stating as follows:

"This case is readily distinguished from that class of cases which hold contracts made by the officers and agents of railroad companies for their own gain, whereby they agree to secure the location of stations, depots, etc., at particular places, or whereby it is stipulated for the location of stations, depots, etc., at particular places, and prohibiting the location or erection of any others within certain prescribed limits, to be void as against public policy."

The supreme court of Kansas in the case of *McClure v. Mo. River, Fort Scott & Gulf Railroad Co.,* 9 Kans. 373, said:

"A railroad company may receive by voluntary grant, or purchase, and hold real estate for the purpose of aiding it in the construction, maintenance and accomodation of its railroad.

"A contract to convey real estate to a railroad company for said purpose, provided it build a railway to a certain place, and locate its depot within a certain town, is not in contravention of public policy, or void."

And in the case of *Tucker v. Allen,* 16 Kans. 312, it was held that a condition in the deed binding a railroad company not to build a depot at a certain place within one year, did not render the deed void. We quote from the syllabus:

"One of the conditions of a deed was, that no railroad depot should be built at a certain place within one year. No depot was built at such place within that time, and all of the other conditions of the deed were strictly fulfilled, and everything connected with the deed was fully executed, and there was nothing to show that any injury or inconvenience ever resulted to any person or to society because no depot had

been built at the place designated: *Held,* that neither the grantor in said deed, nor any person (with notice) claiming under him, can avoid said deed, merely because of a supposed illegality in inserting in said deed said conditions not to build said depot."

And then the court says in the opinion:

"We suppose it is not claimed that the agreement to lay out the land into a townsite, was illegal. Neither do we suppose that it is claimed that the agreement to build the depot was illegal. It is the agreement *that a depot should not be built which* we suppose the defendant in error claims was illegal."

The supreme court of Iowa has also recognized the validity of such contracts in the case of *Taylor v. The Cedar Rapids & St. Paul Railroad Co.,* 25 Iowa 371, in the following words:

"Where a conveyance of a right of way to a railroad company is upon the condition, and contains a proviso, that the depot of the company is to be located within a certain distance of a particular place, a breach of such condition, on the part of the company, has the effect of defeating the estate conveyed by the deed; and the grantor, not having surrendered the possession of the land, may enforce the forfeiture and have his damages for the right of way assessed as though no deed had ever been made."

The same question arose in North Dakota. (*Griswold, et al v. Minneapolis St. P. & S. S. M. R. Co.* 97 N. W. 538.) The court said:

"The owner of the land conveyed the same to a railroad corporation for a right of way upon the express condition contained in the deed that, if the grantee failed to erect and maintain a depot at a point named in the deed, the land should revert to the original owner. The depot was erected but was subsequently abandoned. It is held in an action to

·recover possession: (1) That the above provision constituted a condition subsequent and not a covenant; (2) that the condition not being restrictive as to the erection and · maintenance of depots at other points, is not void as against public policy."

The validity of contracts to erect and maintain depots at particular places is recognized by the supreme court of Arkansas, in the case of *Little Rock & Ft. Smith Ry. Co. v. Birnie.* 26 S. W. 528, and in the case of *Mississippi River, H. & W. Ry. Co. v. Ford,* 71 S. W. 947, and also by the supreme court of Georgia in the case of *English v. Carlton,* 24 So. 127

The question arose in California in the case of *Southern California Ry. Co. v. Slauson,* 71 Pac. 352. The court said:

"Where a landowner agreed with a railroad company that it might lay its tracks on his land, provided that it would build a good depot on the land, and stop all regular trains there, and that, when such was done, he would give a deed, and the road laid its tracks, but failed to build the depot, etc., the land owner could not recover possession, but his remedy was for compensation and damages, if the road should continue to fail to perform."

The case of *Conger, et al. v. New York, W. S. & B. R. Co.* (N. Y.) 23 N. E. 983, was one to compel specific performance of a contract to locate and erect a depot. The contract was recognized as valid and binding, but the court said that equity would refuse to enforce specific performance, and the plaintiff would be remanded to his action for damages, giving his reasons for such judgment as follows: ,

"Specific performance of a contract· by a railroad company with a landowner to erect a station at a certain point will be denied by a court of equity, in. the exercise of a sound ·discretion, where it appears that the place where the station is demanded on one side of a steep mountain, in a sparsely

settled district, and approached by a steep grade; that the station could only be constructed at a considerable expense; and that the public travel would be delayed by the stoppage of the trains, and the public convenience would not be promoted."

The case of *Harris v. Roberts* (Neb.) 12 N. W., 89, is in harmony with the rule for which I contend. Harris and Roberts, being the owners in severalty of a large number of lots in a certain town which would be greatly enhanced in value by the location of a depot near the lots, made a verbal contract wherein it was agreed that if the railroad company required a gratuitous conveyance of any lots, no matter whose lots were conveyed, the other would convey to such party enough of his own lots to equal in number half of the lots so conveyed to the railroad company. The depot was built, and the one party having refused to convey lots to the other pursuant to the terms of his agreement, suit was commenced for damages. The court said:

"But it is said that the contract is against public policy and void, because it tends to make the officers of the railroad company disregard the rights of the public and of the company. Whatever the facts may be, there is nothing stated in the petition from which it may be inferred that the rights of either the public or the railroad company have been disregarded. For aught that appears, the depot is so situated as best to accomodate the public; and the mere fact that the lots were donated is not sufficient of itself to taint the transaction as being against public policy."

As to whether or not such a contract is against public policy was decided by the supreme court of Texas, in the case of *Texas & St. L. R. R. Co. v. Robards,* 60 Texas Reports, 545. The railroad company had entered into a contract with Robards, wherein he was to build a hotel, in consideration

of the building of which the railroad company agreed to encourage the proprietors of the hotel with the patronage of the company, and to dissuade all other parties from erecting an hotel at the company's depot, and further agreed to permanently maintain such depot. Suit for damages was brought against the railroad company for a breach of the contract. The court employed the following language:

"Railroad companies are created with twofold object of gain to those who engage in such enterprises, and for the accommodation of the public in travel and the shipments of freights; and, undoubtedly, it would be against public policy to allow them to so contract as to defeat the objects of their creation. This would be the result if they were so permitted to bind themselves that they could not establish stations at any point on the line that trade, travel and public convenience might require. But it is not perceived how it could work an injury to the public for a company to bind itself by contract to permanently maintain a station at any point on the road, provided it includes no prohibition against establishing such other stations as the management might deem necessary and convenient.

"Each station not only accomodates those who reside in its vicinity, but also the general public who may desire to leave or board the trains, or ship freights to or from such points. The fact that such contracts might work an inconvenience to the company would afford no reason for holding them to be against public policy. It is the public that must be injuriously effected, to have that effect upon contracts."

The same court reaffirmed the rule in the case of *International and Great North R. R. v. Dawson et al.* 62 Tex. Rep. 260, in these words:

"The present weight of authority is to the effect that a railroad corporation can bind itself to maintain perpetually a permanent depot at a particular place."

Another case is *Louisville N. A. & C. R. Y. Co. v. Sumner*, decided by the supreme court of Indiana in 1886; 5 N. E. 404. The railroad company, in consideration of a right of way, had agreed to build and maintain a depot at a designated place. Suit was brought for damages for a breach of the contract, and the court declared:

"Where, in consideration of the grant of a right of way over certain land, a railroad company covenants to erect a depot at a particular place, it is liable in damages for a breach of such covenant."

Mr. Elliott, in vol. 3 of his work on Railroads, on page 1280, says:

"Contracts by which some benefit is secured to the corporation itself by the choice of a particular location are upheld no longer as they do not infringe the rights of the public, and for this reason contracts of subscription and grants of land, conditioned upon the location of the road or depot at a particular place, if fairly made, are upheld in most of the states."

The same doctrine is announced in vol 23 of the Am. & Eng. Ency. of Law, page 688:

"Contracts for the location of railroad lines at particular places are not void *per se* as against public policy, but they are illegal where calculated to prejudice the interests of the public, or of the shareholders of the road, or where they provide for private emoluments to the officers of the road who are intrusted with the duty of choosing its location."

The farthest that any of the courts have gone is to hold that, as a defense to such a contract, one may allege and prove that it was in violation of the obvious necessities and convenience of the public. No such defense has been offered, but, without regard to the effect which the locating of the depot in the particular place may have had upon the public,

a rule of law is adopted which makes the contract void, *per se;* and I decline to concur therein because I do not believe it to be warranted from principle or justified by the authorities. It is true, as contended by the appellee, that the government may exercise, in a general way, supervisory control over railroad companies in the management of their affairs; but this control, if exercised, should be in the interest of the public, to prevent wrongful discriminations regarding the transportation of passengers and freight, and to insure just recognition of the rights of the individual whose business or necessities compel him to deal with them. So long as railroads are operated for private gain they should be left free to make contracts, the same as though they were private individuals in relation to all matters affecting their corporate interests, within the rule I have stated. No public necessity exists which will justify a court in virtually depriving such a company of the right to make contracts which may prove advantageous to it, when its terms are pure, and it contains no provisions capable of an interpretation which would deny to any other person or community equal advantages. And a contract should only be decreed to be against public policy when it can be said that the natural tendency of such contract is against the well-being of the general public. It is not necessary to argue how far the legislature may, or may not control railroads in matters of this character, as such control has not been attempted. The theory that railroads are built for the public convenience, in no way affects the rule for which I contend, as it has been repeatedly held that, notwithstanding a contract to permanently maintain a depot at a given place, if the convenience of the public and the proper and economical operation of the road require that it be re-

moved to some other point, the removal may be made and the party injured will be relegated to his action at law for damages. But a court of equity may, in a proper case, hear the proof and determine as to whether or not such change would be advantageous to the public and is necessary.

After a careful examination of the authorities upon this subject, I confidently maintain that the contract in question is valid, and should be enforced; and if any question of public policy is involved in this case, it is not that the contract is evil in its tendencies, but that men who will not voluntarily pay their honest obligations should be compelled by law to do so. Lile made the contract, the depot was built, and, in my opinion, he is not only bound by law to comply with its terms, but, (speaking from the record) having presumptively received the benefits incident to the building of such station, he is also morally bound to fulfill his promise.

For the reasons stated, I dissent from the majority opinion in this case, and am authorized to add that Chief Justice Burford and Justice Pancoast concur with me in these views.