## MOODY v. KELL.

(Circuit Court of Appeals, Eighth Circuit. July 31, 1916.)

### No. 4610.

CONTRACTS ⬡═►142—LEGALITY OF CONSIDERATION—LOCATION OF TOWN SITE.

A contract by which an officer of a railroad company undertakes to secure the location of the line of road and of a station from considerations of personal profit, and not for the interests of stockholders and the public to be served, is void as against public policy; but when the location of the road and of a station had previously been definitely fixed, a contract by an officer to secure the completion of the road and the platting of a town site at the station within a specified time, in consideration of a payment to be made to himself by the owner of adjoining property, is not necessarily invalid, and may be enforced against the other party, provided he had knowledge of the fact of such previous location, and that it did not constitute any part of the consideration for his promise.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1826; Dec. Dig. ⬡═►142.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by Frank Kell against R. A. Moody. Judgment for plaintiff, and defendant brings error. Affirmed.

⬡═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John W. Willis, of St. Paul, Minn. (H. E. Hoover, of Canadian, Tex., and Charles Swindall, of Woodward, Okl., on the brief), for plaintiff in error.

W. B. Merrill, of Oklahoma City, Okl., and Orville Bullington, of Wichita Falls, Tex., for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge. Kell, the defendant in error, brought this suit in the District Court of the United States for the Western District of Oklahoma to recover from Moody, the plaintiff in error, the sum of $12,525 alleged to be due to him on a certain contract, dated September 12, 1911, of the following tenor:

"Whereas, on the 29th day of August, 1911, I became the possessor by assignment of contract for deed with Harriett Nesbitt and R. T. Nesbitt for the southwest quarter of section twenty-two (22) in township twenty-six (26) north of range twenty-five (25) W. I. M., in Harper county, Oklahoma, which contract for deed obligates me to pay unto the said parties the sum of four thousand ($4,000.00) dollars in consideration of a good and sufficient warranty deed conveying the above described land unto me; and

"Whereas, on the 12th day of September, 1911, I became the possessor of a contract for deed with E. E. Coulter and Nella Coulter for the northwest quarter (N. W. ¼) of section twenty-seven (27), township twenty-six (26) north, of range twenty-five (25) W. I. M., in Harper county, Oklahoma, which contract for deed obligates me to pay unto the said parties the sum of eight thousand three hundred and fifty ($8,350.00) dollars in consideration of a good and sufficient warranty deed conveying the above described land unto me; and

"Whereas, on the 6th day of September, 1911, I entered into a contract for a good and sufficient warranty deed with John Mollman, owner of the southeast quarter of section twenty-one (21) and the northeast quarter of section twenty-eight (28), all of township twenty-six (26), range twenty-five (25) W. I. M., in Harper county, Oklahoma, obligating myself to pay for said tract the sum of twenty-five thousand ($25,000.00) dollars in payments as specified in said contract for deed with said John Mollman.

"The total sum of the several contracts which I have obligated myself to pay equals the sum of thirty-seven thousand three hundred and fifty ($37,350.00) dollars.

"Be it known that on this the 12th day of September, 1911, I have assigned unto Frank Kell, of Wichita Falls, Texas, the several contracts hereinbefore mentioned, reserving the crops, he assuming the payment of the balance due on said contracts, which equal the sum of $35,700.00, I having heretofore paid on said several contracts the sum of $1,650.00, leaving as aforesaid the sum of $35,700.00 as a balance due, which sum as aforesaid the said Frank Kell assumes and obligates himself to pay, and in consideration of his assuming the payment of the balance due on said contracts as aforesaid, and for the further consideration that said described tracts of land or part thereof are to be used by the said Frank Kell, his successors and assigns, for the location of a town site, the location of a railroad, railroad depot, station, and side tracks, which railroad depot, station, and side tracks are to be constructed on and across said lands, or a part thereof, on or before eleven months from the date hereof, and the said town site to be platted on said tracts, or a part thereof, within six months from the date hereof, and as a further consideration of the enhancement in value of certain lands owned by me adjoining said town site in the immediate vicinity thereof, that will be materially enhanced in value by reason of said town site being located on the lands hereinbefore described, I agree to reimburse the said Frank Kell in the sum of $12,525.00, payable as follows, to wit: $6,000.00 due from me and payable unto him on October 15, 1911, $3,000.00 due from me and payable unto him on November 15, 1911, $3,535.00 due from me and payable unto him on December 15, 1911,

which said sums, if not paid when due, to draw 10 per cent. from maturity until paid.

"It is expressly understood that before the 15th day of October, 1911, the date that I agree to pay Frank Kell the sum of $6,000.00 as aforesaid, he, the said Frank Kell, is to deposit with me in my hands a good and sufficient personal bond, signed by himself and J. A. Kemp, guaranteeing unto me that the aforesaid town site, railroad, railroad station, and side tracks will be located on and across the said described tracts as aforesaid within the time hereinbefore specified, and in the event that he, the said Frank Kell, his successors and assigns, fail to so locate said town site, railroad, railroad station, and side tracks upon said described land, as aforesaid, then and in that event he is to reimburse me by refunding unto me the money that I have paid out as a part and parcel of the $12,525.00, and also $1,650.00 heretofore paid by me, with interest at 10 per cent. thereon from the date of payment to the date of reimbursement, August 12, 1912.

"In witness whereof I have hereunto set my hand, this the 12th day of September, 1911.                              [Signed]   R. A. Moody."

Plaintiff alleged in his petition that he duly performed all the terms and conditions of the contract obligatory upon him, paid the contract obligations of Moody assumed by him, and within 11 months thereafter caused the railroad to be built, and the station, with side tracks, to be located on part of the lands described in the contract, and caused to be located thereon a town site adjacent to other lands then owned by the defendant, according to the conditions imposed upon him by the contract, but that the defendant has failed and refused to pay to him the sum of $12,525, according to his promise in that behalf made in the contract.

The defendant, for his answer, admitted the execution of the contract, but alleged that Kell at the time it was made was vice president and general manager of the Wichita Falls & Northwestern Railway Company, which was then engaged in the construction of a line of railroad from Elk City, Okl., in a northwesterly direction, extending through Harper county, in which the land involved in this suit was situated; that he was also interested in a construction company engaged in constructing the railway, and in a town site company organized for the purpose of locating townsites along the railway; that plaintiff represented to him, the defendant, that the course and route of the railroad through Harper county had not been definitely decided; that plaintiff was able to control its definite location, and also that of the station, side tracks and town sites thereon; that if defendant would enter into the contract hereinbefore set out, and pay to him the sum of $12,525, he would locate the route of the railroad and a station with side tracks on and across the lands involved in this case, and would also cause a town site to be laid out on the lands; that by reason of the foregoing facts the contract was against public policy and void.

Plaintiff's reply was substantially this: That the course and route of the railroad through Harper county had been definitely and finally fixed and determined, and the station and depot grounds had been definitely located on a portion of the land in question prior to September 12, 1911, the date of the contract, and that defendant, Moody, knew these facts at and prior to the date of the contract in question; that in view of these facts the only consideration for the contract on

plaintiff's part was the assumption by him of the balance of the purchase money for the land due from Moody and also the completion of the construction of the railroad, side tracks, station, and depot grounds, so definitely located, *within 11 months after the date of the contract*, and also the platting of a town site on the land in question within six months after the date of the contract; that there was nothing in these things (which were the real considerations for the contract) contrary to public policy, or of such character as to render the contract void.

To the petition, and again to the reply, the defendant filed a demurrer, and upon the pleadings as a whole moved for judgment in his favor. These demurrers and this motion were overruled by the court, and due exceptions saved to the rulings, and afterwards the cause came on for trial before a jury. The evidence conclusively shows that Kell, the plaintiff, was a director and vice president of the Wichita Falls & Northwestern Railway Company, and was also interested in the construction and town site companies, as pleaded by defendant. It tended to show that the railroad had been routed and definitely located across the lands in question, that the station, side tracks and depot grounds had been definitely located on the same land before September 12, 1911, the date of the contract, and that the defendant knew these facts at the time he entered into the contract.

In view of these facts, and especially of the fact that Kell was an officer of the railroad company, the trial court held, and so charged the jury, that the contract on its face was against public policy and void, on the ground that a railroad company had a public duty to discharge in the matter of locating the route and station house of its railroad, and that its officers could not, by contract or otherwise, jeopard the rights of the public by contracting for a personal advantage in so doing. But the court also, in view of the testimony tending to show that the railroad and its station, side tracks and depot grounds had been definitely and finally located on the lands in question prior to the making of the contract, and that Moody had knowledge of these facts at that time, also charged the jury, in effect, that if they should find such to have been the facts the routing of the railroad on the lands in question, and the location of the station, depot grounds, and side tracks did not form any part of the real consideration moving Moody to sign the contract, and that the assumption by Kell of the balance due by Moody to his grantors, and his efforts in securing the location of the town site, afforded sufficient consideration for the promise of Moody.

To this charge no exception was taken by the defendant, but he had demurred to plaintiff's petition, moved for judgment on the pleadings, moved to strike out parts of the reply setting up the facts of the location of the road and defendant's knowledge of it prior to the time the contract was entered into, and at the close of the case he moved for judgment on the pleadings and the undisputed evidence in the case, on the ground that the contract sued on was void because against public policy. In many other ways the sufficiency of the proof of prior location of the railroad and defendant's knowledge of it was chal-

lenged as any antidote for the illegality of the contract apparent on its face; so that, notwithstanding the fact that no exception was taken to the charge, the question is fairly raised whether the location of the road across the land described in the contract prior to the making of that contract and defendant's knowledge of it at the time the contract was made, extracted the virus of illegality from the contract and left it enforceable against the defendant.

This is the important question for our consideration. The law is well settled that officers of a railroad corporation hold a position of trust and confidence in favor of their stockholders, with a duty to serve them faithfully and promote their interests with a singleness of purpose to that end. Railroad corporations are also quasi public corporations. They derive their existence, franchises, powers, and privileges from the public, and their officers hold their positions as quasi public officers, with the duty and obligation resting upon them to construct and locate their roads so as best to accommodate the public and thereby promote the welfare of their stockholders. As a necessary corollary to these principles, contracts for the location and construction of a railroad must be made by officers of a railroad company with an eye single to the best interests of the stockholders and of the public as well. Any contract made by such officers, either for the location of the road or its operation, whereby such officer is or may be induced to disregard these fiduciary obligations is in violation of his trust, and clearly unlawful. A fortiori, any contract made by such officer for the location or operation of his road, by the terms and provisions of which he is to secure a personal reward or advantage for doing it in a given way, is unlawful. It is in the nature of a bribe. Its inevitable tendency is to destroy the disinterested attitude which alone permits him to properly discharge his fiduciary duties. Such a contract, on the ground of public policy, as well as on the implied obligation arising from his contract of employment, is void. Woodstock Iron Co. v. Richmond & Danville Extension Co., 129 U. S. 643, 661, 9 Sup. Ct. 402, 32 L. Ed. 819, and cases cited; Cook v. Sherman (C. C.) 20 Fed. 167; Enid Right of Way & Townsite Co. v. Lile, 15 Okl. 317, 82 Pac. 810.

This proposition is not seriously disputed by plaintiff's counsel. Their contention is that the contract in question, when properly interpreted in the light of the facts existing at the time it was made, imposed no obligation upon the plaintiff to violate his duty or do any unlawful act. Their contention in this regard is that the railroad had already been definitely and finally located, and the station house and depot grounds had been finally located upon the land described in the contract, prior to the execution of the contract, and that these facts were known to the defendant when he made it; that as a result their location could not and did not afford any consideration for the defendant's promise. Much ground for this contention is found in the language of the contract itself. The stress of the agreement does not seem to be the future *location* of the railroad, depot, and depot grounds upon the lands in question, but rather for their construction within the specified time. The language of the contract is this:

"* * * That said described tracts of land or a part thereof are to be used by the said Frank Kell, his successors and assigns, for the location of a town site, the location of a railroad, railroad depot, station, and side tracks, which railroad, depot, station, and side tracks are to be constructed on and across said lands or a part thereof *on or before 11 months from the date hereof, and the said town site to be platted on said tracts or a part thereof within 6 months from the date hereof.* * * *"

This language, taken by itself, reasonably justifies a contention that the parties intended to provide for the construction within the period of 11 months of a railroad, depot, station, and side tracks, which were already located on the land. But, conceding that the phraseology of the contract in this particular is ambiguous, and that it leaves its true meaning in doubt, it becomes our duty, according to familiar rules of construction, to so interpret it as to give effect and force to all its provisions, if possible, and in doing so we may also, according to well-settled rules governing the construction of contracts of doubtful import, take into consideration facts existing at the time in the light in which the parties acted.

Applying these rules of construction, we think the parties intended nothing, by the clause of the contract in question, but to obligate Kell, the plaintiff, to complete the construction of the road and its station and depot grounds, already definitely located across and upon the land in question, within the period of 11 months from the date of the contract. Time was obviously made the chief feature and essence of the contract. It would have been quite absurd for the parties to deliberately make a contract requiring Kell to route a railroad and locate station house and depot grounds on a given piece of land, when these things had already been done, and when Moody knew it at the time he signed the contract. We think it quite clear, in view of the language of the contract itself and of the facts existing at the time it was made, that the learned trial judge correctly let the jury find the facts just referred to as the conclusive and controlling questions of fact in the case.

Criticism of the rulings upon the demurrers, motions to strike, and other attacks upon the pleadings, in view of the ambiguous character of the contract, as already pointed out, are without merit. Moreover, all the questions raised thereby were saved to the defendant in his request at the close of the case for a peremptory instruction to the jury to find a verdict on the pleadings and proof in his favor.

Counsel for defendant contend that, if the routing of the road over and locating the station and depot grounds upon the land in question be held to constitute no consideration for the contract, then there was no consideration for it at all, and that it was unenforceable. This is not correct. Ample consideration for defendant's promise is found in Kell's assumption of the payment of the balance due on the purchase price of the land, in the location of the town sites, as to which no illegality is imputed, and in his undertaking to do the work within the time specified.

The judgment is affirmed.